IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KI KADEN,

    Plaintiff,

v.                                  No. 05 C 2212
                                   Elaine E. Bucklo
FIRST COMMONWEALTH INSURANCE
COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff Ki Kaden ("Kaden") filed an amended putative class action complaint ("amended complaint") against defendant First Commonwealth Insurance Company ("FCI") alleging causes of action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), for breach of contract (count I)[1] and promissory estoppel (count II).[2] FCI has moved for summary judgment on both counts. For the following reasons, FCI's motion for summary judgment is granted. Kaden has moved for class certification.[3] I deny that motion as moot.

---

[1] I previously construed count I as a claim under ERISA for recovery of benefits pursuant to § 1132(a)(1)(B). *Kaden v. First Commonwealth Ins. Co.*, No. 05 C 2212, 2006 WL 1444886, at * 3 (N.D. Ill. May 18, 2006).

[2] The remaining counts of the amended complaint, alleging fraudulent misrepresentation (count III) and negligent misrepresentation (count IV) under ERISA, were previously dismissed. *See id.*

[3] The motion to certify was filed nearly five months before FCI's motion for summary judgment. But, due to both parties' multiple requests for extensions of time, Kaden's reply brief on the motion for class certification ultimately was filed on the same day as FCI's motion for summary judgment.

I.

A number of the facts in this case are undisputed. Where disputed, the facts are taken from the properly pled portions of the parties' Local Rule 56.1 statements. In its briefs, FCI does not cite to the Local Rule 56.1 statements and responses thereto. To the extent FCI has included facts not contained in the Local Rule 56.1 statements and responses thereto, I have not relied on such facts. In his response brief, Kaden repeatedly cites to the record instead of the parties' Local Rule 56.1 statements and responses thereto. To the extent Kaden has cited portions of the record that were not contained in the Local Rule 56.1 statements and responses thereto, I have not relied on such facts.

Kaden, an Illinois resident, was a participant in and beneficiary of FCI's Plan 3000 Dental HMO Plan ("Plan"). FCI, a Wisconsin corporation doing business in Illinois, is a wholly-owned subsidiary of The Guardian Life Insurance Company of America, and offers dental service plans through a network of dentists. FCI was the insurer of the dental HMO plan offered by Kaden's employer, Advanced Business Technologies ("ABT"). First Commonwealth Health Service Corporation ("First Commonwealth") and ABT entered into the Group Master Contract, which states

> The Group shall remit to First Commonwealth on or before the Due Date the applicable total Premium for each Member. Any required contribution to be paid by the Subscriber shall be collected by payroll deduction or otherwise by the Group. In all cases, Group

2

shall be responsible for all such Premium payments.

The Plan is a dental HMO. Plans are generally sold to employers by FCI through insurance brokers. It is network-based with a fixed set of copayments. Copayments are member responsibility payments.

During the annual open enrollment period, FCI provides employers that purchased its dental plans with an enrollment kit, which includes a marketing brochure to be distributed to employees. The brochure contains a partial list of services. The brochure contains a warning that, "*This is an advertising brochure and is not intended to represent a complete description of the plan. A complete description of the benefits limitations and exclusions is included in the benefit subscription certificate.*" (Emphasis in original.) The brochure states that the member's payment responsibility for a given service is based on a fee schedule of charges "common in your community" that may vary from a dentist's customary charge and, "Your dentist will inform you of your payment responsibility." According to the brochure, "For services covered at less than 100%, your payment responsibility is determined by applying the coverage levels in the benefit summary to First Commonwealth's fee schedule of dental charges common in your community, which all participating dentists have agreed to accept." FCI expected members to review the kit containing a plan brochure before choosing to sign up for the plan.

According to FCI's Rule 30(b)(6) deponent, Carol Egan

3

("Egan"), FCI used more technical terms in the Subscription Certificate than in the brochure "knowing that once they enrolled if they had any question on the plan document, they could call member services." FCI expected "members to understand what their coverage levels are based on the plan documents." The brochure provided that, once enrolled, a person was required to remain in the plan for the entire year. The Subscription Certificate states that "enrollment in this Plan is for a minimum of twelve (12) consecutive months while eligible through your Group." Egan testified that, if a subscriber receives the Subscription Certificate and does not like the benefits, then he would be allowed to disenroll.

To set copayment amounts for specific services, FCI took information from the data source being used at the time, Health Insurance Association of America ("HIAA"), for Chicago or whichever market and "put it into a spreadsheet, appl[ied] the percentages as they're defined in the plan, and calculate[d] the copays." The HIAA data came "in the form of percentile rankings giving the mean and the percentile ranking for many services, most services in a given geographic area." FCI's Rule 30(b)(6) deponent, Paul Chaitkin ("Chaitkin"), testified that the range of copayments is the same for all members in a region and is "generally focused on a single zip code in the region, which is generally considered to be the – not only the most common but also the highest fee in that

4

region . . . the fee that would be acceptable to dentists in that zip code and all the others." FCI used the highest fees in the HIAA data because it decided that fees common in the community meant any fee charged by more than one dentist. FCI used HIAA pricing data for a region limited to zip codes beginning with 606 to determine the copayment schedule for all of northern Illinois.

Egan testified that FCI believed the HIAA data "to be accurate and reflective of the charges in the community." Egan testified that she would think a plan member would know what a fee common in the community was "by having gone to their dentist and having services rendered to them." Egan also testified that a plan member does not have access to what FCI determines is the fee common in his community. Egan further testified that FCI did not distribute any documents containing the fees common in the community to plan members, subscribers, clients, or brokers. Chaitkin attested that, to the best of his knowledge, the State of Illinois approved the Plan 3000 in 1998 and never required FCI to file or disclose HIAA pricing data.

At the beginning of every year, FCI sent updated copayment schedules to employer groups participating in the dental HMO plan. The cover letter accompanying the updated schedules told the employer to keep the copayment schedule in its files and distribute it to employees who requested the information. The schedule was not sent to employees as "a cost consideration." Employee members

could also obtain the schedule of member's payment responsibilities from the member services department upon request. Section 5.2 of the Group Master Contract states that it is sufficient for First Commonwealth to deliver materials for distribution to the group representative who thereafter is responsible for distributing those materials to employees. Dentists also received an updated schedule reflecting copayments for the different dental HMO plans.

The Subscription Certificate was sent to employees subscribing to the Plan as soon as possible because it included the identification card. The goal was to get the Subscription Certificate and the identification card to the plan member before his or her effective date of coverage. The Subscription Certificate referred to a copayment schedule. Specifically, the Subscription Certificate provides

> The coverage levels contained in the Schedule of Benefits section of this booklet are guaranteed under this contract. All coinsurance percentages are applied to an annual fee schedule that Participating Dental HMO offices have agreed to accept. Your portion of that cost, i.e., you Copayment is based on this fee schedule and will not vary, based on which Participating Dental HMO Office you choose or your dentist's customary charges for services rendered.

The Subscription Certificate defines "[c]opayment" as the member's portion of the cost of services rendered that is paid directly to the dentist at the time services are performed, and further states

> Your copayment is based on a fee schedule that all participating dentists have agreed to

6

accept and the applicable coinsurance rate determined from the Schedule of Benefits. Copayments are adjusted on January 1st each year based on adjustments in the fee schedule accepted by participating providers. All providers charge the same copayments (for the same services) based on the fee schedule in effect at the time services are rendered.

Additionally, the Subscription Certificate contains "Complaint Resolution Procedures[,]"[4] which state

> If you have questions, concerns, comments or complaints about services, personnel or facilities that cannot be resolved to your satisfaction after speaking directly with the dentist or other concerned party, please contact us in writing or by phone. Our internal service standards require, where possible, to resolve all Member's inquiries and concerns immediately. If however resolving the issue will require additional time, the Member will be given the best estimate of the amount of time needed for resolution.
>
> If your complaint has not been resolved to your satisfaction, you have the right to appeal our decisions. You may do so by

---

[4]FCI initially stated that the Subscription Certificate set forth administrative remedies that included a grievance and arbitration procedure, but the Subscription Certificate attached to its Local Rule 56.1 statement (as Exhibit 6) and to its answer and affirmative defenses to the amended complaint (as Exhibit B) contain no such language. FCI previously attached to its reply in support of its motion to dismiss a different Subscription Certificate that described a grievance procedure and required sixty days notice of legal action. *See Kaden*, 2006 WL 1444886 at *4. In FCI's reply in support of its Local Rule 56.1 statement, it acknowledges that it initially cited the wrong procedure. And in FCI's response to Kaden's Local Rule 56.1 statement of additional facts, it quotes the "Complaint Resolution Procedures" actually contained in the Subscription Certificate attached to both its Local Rule 56.1 statement and its answer and affirmative defenses.

7

submitting, in writing, the reasons why you
disagree with our decision along with any
additional information you wish us to
consider. This appeal should be submitted no
later than 30 days from the date of our
original decision or from the date of the
incident. You will receive an acknowledgment
of our receipt of the appeal advising you of
when to expect a written response.

The appeal will then be sent to the President
for a final review and decision. The
President, at his sole discretion, may advise
you of a hearing date to review the complaint
and consider all the facts. You must attend
the hearing (up to three dates will be
considered). If following the outcome of the
appeal process you are still dissatisfied with
the resolution, you may choose to notify the
State of Illinois Department of Insurance . .
. .

Kaden worked for ABT from November 1998 to May 2002. He selected FCI's Dental HMO Plan through ABT. FCI followed a standard procedure for intaking information regarding new subscribers to its dental plans and for distributing plan information to new subscribers. Under this procedure, an employee who wished to enroll in a FCI plan would fill out an application, which he would give to his employer. Then the employer would forward the application to FCI's Chicago office. The application would contain pertinent information such as the employee's address and enrollment date. Once FCI received the application, it would be forwarded to the operations and processing department where the information would be put into the computer system. Once the new subscriber's information was entered, it would automatically

trigger a request to send a Subscription Certificate to that individual. Each Subscription Certificate sent to new members contained a page with a perforated section, which was designed to be removed by the new subscriber and serve as the plan identification card.

FCI's computer system recorded every transaction entered into the computer system regarding a specific individual. The system reflects that Kaden's name was added to the plan on April 19, 2000. Under FCI's normal procedure in 2000, the transactions input into the system automatically caused a Subscription Certificate and "I.D." card to be mailed to Kaden at the address provided on his enrollment form. After enrolling in the FCI plan, Kaden selected Dr. Michael Schwartz ("Schwartz") from the list of dentists participating in FCI's Dental HMO Plan.

Kaden paid a premium of more than $300.00 in 2002. On August 3, 2002, Kaden visited Schwartz and received three fillings, for which he was charged $73.00 each. Kaden was required to pay that same day, and he did so. He did not receive sedative (amalgam) fillings; he received single-surface composite (white) resin fillings. Generally, there is no reason to get a white filling in the posterior teeth other than cosmetic reasons. The dentist who performs such a service is expected to explain the options to the patient because the prices differ. Dentists did not perform the procedure Kaden received often because they knew it was considered

cosmetic.

The brochure indicates that coverage for "Basic Services," including "restorative" fillings, is 80%. The Subscription Certificate indicates that coverage for "Minor Restorative" services, including "Silver Amalgams, Anterior Direct Composite Resins, [and] Sedative Fillings," is 80%. The Subscription Certificate specifies that coverage for "cosmetic" services, including posterior composite resins, is 50%. The charge for the service Kaden received was $58.00 based on FCI's copayment schedule. FCI expected that Schwartz would have described to Kaden the option to have an amalgam filling instead of a composite posterior restoration and explained that the copayment differed for the two procedures.

Kaden felt he was overcharged. Shortly after Kaden's visit to Schwartz, Kaden's wife, Margaret, called FCI. Margaret testified that the person she spoke to told her that: FCI does not get involved in disputes and she would have to take it up with the dentist; Margaret could not talk to a supervisor; FCI does not have a complaint department; Margaret could not have her name or a supervisor's name; and if Margaret was not happy with the dentist, then she could choose another one. Margaret called FCI again and spoke to another person, who Margaret testified also would not provide her name, and Margaret testified that this person told her: Margaret could not speak to a supervisor; there was no complaint

department or way to file a grievance; and Margaret could file a complaint with the Department of Insurance. Chaitkin attested that FCI had a process in place in 2002 for receiving telephone complaints from Plan participants whereby all complaints not resolved by member services personnel on the initial call were recorded for written follow up. Chaitkin further attested that he investigated FCI's records and found no record of any unresolved telephone complaint made by or on behalf of Kaden.

In December 2005,[5] FCI wrote to Schwartz advising him that he had charged Kaden $73.00 for each filling when he should have charged $58.00. Schwartz wrote a letter to Kaden enclosing a check for $25.00 as a refund of $15.00 per filling minus a supposed undercharge of $20 for another service. The letter also stated that, "Acceptance of this check negates any claims of any kind against MICHAEL SCHWARTZ, DDS." Margaret testified that she forwarded an envelope from Schwartz's office to Kaden's attorney without opening it.

II.

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue for trial exists "if the evidence

---

[5]Kaden originally filed a complaint in state court on December 30, 2004, which was removed to federal court on April 14, 2005.

is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant initially bears the burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the non-movant "may not rest upon the mere allegations or denials of the adverse party's pleading," but rather "must set forth specific facts showing that there is a genuine issue for trial." *See* FED. R. CIV. P. 56(e). I must construe all facts in the light most favorable to the non-movant and draw all justifiable inferences in favor of that party. *See Anderson*, 477 U.S. at 255.

Count I alleges that FCI failed to provide the discounted dental benefits to which Kaden was entitled. (*See* Am. Compl. ¶¶ 1, 22, 50.) FCI first argues that summary judgment should be granted on count I because Kaden failed to exhaust administrative remedies. "As a pre-requisite to filing suit, an ERISA plaintiff must exhaust his internal administrative remedies." *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002); *see Gallegos v. Mt. Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir. 2000); *Ames v. Am. Nat'l Can Co.*, 170 F.3d 751, 756 (7th Cir. 1999). A plaintiff is excused from failing to exhaust administrative remedies if there is

a lack of meaningful access to claims procedures or if pursuing those remedies would be futile. *Stark v. PPM Am., Inc.*, 354 F.3d 666, 671 (7th Cir. 2004); *Ames*, 170 F.3d at 756-57; *see Gallegos*, 210 F.3d at 808.

Contrary to the allegation in the amended complaint that there was no administrative remedy (am. compl. ¶¶ 6, 23), FCI contends that an administrative remedy was set forth in the Subscription Certificate's Complaint Resolution Procedures. FCI further contends that Kaden received a Subscription Certificate, and nothing prevented him from using the written appeal procedure contained therein. Kaden argues that he should be excused from the exhaustion requirement because he was denied meaningful access to administrative remedies in the following ways: (1) FCI's "denials of [his] complaint" violated § 1133(1) and 29 C.F.R. § 2560.503-1(g) because they were not in writing, FCI provided no explanation for the denial, and FCI did not advise him of the review procedure, time limits, or right to pursue legal action following review; (2) the review procedure violated § 1133(2) and 29 C.F.R. § 2560.503-1(h)(2)(i) because it allowed only 30 days for written appeals when the regulations require 60 days;[6] and (3) Margaret was told there was no complaint department or way to file a grievance. Kaden also

---

[6] Kaden also argues that FCI failed to provide, upon request and free of charge, reasonable access to and copies of documents, records, and information relevant to the claim as required by § 2560.503-1(h)(2)(iii). This assertion is not supported by Kaden's citation to the record.

argues that pursuing administrative review would have been futile because he challenges FCI's "flat position on an issue that applied to every member in the exact same manner" and that "it would not have enabled him to obtain the remedy he now seeks: an adjustment of the fee schedule to reflect typical, not the highest, charges for dental services."

I find that Kaden was not denied meaningful access to the administrative remedies so as to excuse his failure to exhaust. The Subscription Certificate containing the procedure was mailed to Kaden upon his enrollment in the Plan in 2000 - two years before incurring the disputed charges. Taking the facts in the light most favorable to Kaden, even if Margaret was misinformed about the proper procedure when she telephoned FCI in 2002, nothing precluded Kaden from filing a written appeal as provided for in the Subscription Certificate sent to him two years earlier. In addition, Kaden's argument that the procedure allows only thirty days in which to file a written appeal is beside the point where no appeal ever was filed - as opposed to an untimely one.

I also find that Kaden's failure to exhaust is not excused on the ground that pursuing administrative remedies would have been futile. FCI's Complaint Resolution Procedures apply to issues about "services, personnel or facilities[.]" Kaden does not claim that administrative review would have been futile because it would not have resulted in reimbursement for the difference between the

amount he paid – $73.00 per filling – and the amount he should have been charged under the plan – $58.00. Rather, Kaden's challenge aims generally at the fees charged for services, which apply equally to him and other members. Kaden has not circumvented the exhaustion requirement by attempting to describe his claim as falling outside the scope of the procedure.

Kaden failed to exhaust administrative remedies, and his failure to do so was not excused by lack of meaningful access or futility. Therefore, FCI is entitled to summary judgment on count I. Because I grant summary judgment for FCI based on Kaden's failure to exhaust administrative remedies, I need not address FCI's additional argument that summary judgment should be granted on count I based on Kaden's receipt of the benefits to which he was entitled.

Count II alleges that FCI promised to provide benefits as set forth in the brochure, FCI intended that these representations would induce reliance, Kaden reasonably relied on FCI's written representations to his detriment, he suffered damages, and therefore FCI is estopped from providing benefits at an amount less than what was represented. (See Am. Compl. ¶¶ 15, 88-93.) Kaden does not contest that $58.00 was the amount he should have been charged; he does not argue that he should have been charged less based on coverage for his fillings at a rate of 80% as opposed to 50%. Rather, Kaden focuses on FCI's use of the phrase "common in

your community" in the brochure. FCI argues that summary judgment should be granted on count II because the elements of promissory estoppel have not been shown, namely: (1) a knowing misrepresentation; (2) made in writing; (3) with reasonable reliance on that misrepresentation by the plaintiff; (4) to his detriment. *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 585 (7th Cir. 1999).

FCI first argues that Kaden cannot show a knowing misrepresentation because FCI relied on data from an outside source to establish a copayment schedule that would be acceptable to all participating dentists, and nothing in the record suggests that it set copayment responsibilities higher than necessary to obtain dentists' participation. Chaitkin testified that copayments were set by region, focusing on a zip code that was "not only the most common but also the highest fee[.]" FCI used the highest fees because it decided that fees common in the community meant any fee charged by more than one dentist.

FCI claims that "the brochure stated that the fee would be high enough so that all, not most or many but 'all,' participating dentists would agree to accept that amount." FCI mischaracterizes the brochure, which states only that "payment responsibility is determined by applying the coverage levels in the benefit summary to First Commonwealth's fee schedule of dental charges common in your community, which all participating dentists have agreed to

16

accept." The brochure notes that "payment responsibility is based on a fee schedule of dental charges common in your community and may vary from your participating Dental Network dentist's customary charges." As such, the brochure does not specifically convey that the fees had to be "high enough" to gain the dentists' acceptance.

Nevertheless, the brochure advises that fees may vary somehow from a participating dentist's customary charges. Moreover, the brochure indicates that it "is not intended to represent a complete description of the plan[,]" directing employees to the Subscription Certificate for a "complete description of the benefits limitations and exclusions[.]" The Subscription Certificate, in turn, refers to the fee schedule. Although not provided directly to employees, updated copayment schedules were given to employers and dentists, and were available upon request from the employer as well as FCI member services. Taken in the light most favorable to Kaden, the facts do not demonstrate that FCI made a knowing misrepresentation regarding member payment responsibility.

FCI also argues that Kaden cannot show reasonable reliance, again focusing on the availability of information apart from the brochure concerning coverage levels and copayment schedules. FCI does not contend that the Subscription Certificate and the copayment schedule specifically refer to charges "common in the community." As explained above, however, the brochure directed Kaden to the Subscription Certificate, which mentions the copayment

17

schedule. And the copayment schedule itself was available upon request. Therefore, the facts do not show that it was reasonable to rely on the brochure alone.

FCI finally argues that Kaden was not damaged because he received all benefits to which he was entitled. Schwartz issued Kaden a refund check for the difference between the amount he paid and the amount he should have been charged under the plan, less a supposed $20.00 undercharge. Again, Kaden does not contest that $58.00 was the amount he should have been charged under the Plan. Rather, Kaden contends that he should have been charged 80% of some lesser amount than what FCI deemed to be the charge common in the community for that service. But, as explained above, Kaden has not shown that FCI knowingly misrepresented the amount of member payment responsibility or that Kaden's reliance solely on the brochure was reasonable. Kaden cannot claim his 2002 premium payments as damages based on his reliance on the brochure when he received the Subscription Certificate, referring to the fee schedule, in 2000. Moreover, to the extent Kaden claims he was damaged by being reimbursed in an amount offset by $20.00, that dispute is between Kaden and Schwartz.

III.

For the foregoing reasons, FCI's motion for summary judgment is granted. Kaden's motion for class certification is denied as moot.

ENTER ORDER:

*Elaine E Bucklo* (signature)

**Elaine E. Bucklo**
United States District Judge

Dated: February 4, 2009